In the Matter of the Adoption of " RICHARD RIVERS " and Another.

County Court, Chautauqua County, June 26, 1951.

*Tuby L. Scarpino* for petitioners.

*M. D. Lombardo* for respondent.

BODINE, J. Petitioners are the father and stepmother, respectively, of the two children, the proceedings for the adoption of which by petitioners is before us. The children are twelve and nine years of age, and are the issue of the petitioner parent and respondent. Notice of the proposed adoption was given as contemplated by section 111 of the Domestic Relations Law and the answer filed by respondent raises the issues here considered.

The parents were divorced in this State by decree of the Supreme Court which became final on June 20, 1946, petitioner parent being plaintiff in the action. There was no appearance by respondent, defendant in that action. The decree of divorce granted custody of the children to petitioner parent and reserved no right of visitation to respondent mother. Petitioners were married May 8, 1948, and respondent remarried on February 2, 1948.

The circumstances terminating in the divorce decree as related by the parties, indicate that it was mutually desired. In fact one might gather the idea that each was vulnerable to an extent but neither had the requisite proof on the other. At any rate, the husband brought the action and respondent provided the witness, now deceased. Petitioner father took custody of the

children in 1945 prior to the divorce decree with respondent's consent and with right of visitation which permitted her to see them at any time but not to have them overnight, which agreement, she claims, was understood to be a continuing one surviving the divorce. She has visited one of them often but not as much the other who has been in the home of a relative of the father and her request to visit him has been denied. She has given them Christmas presents and desires to have access to her children. She last saw them in December, 1950.

Petitioner father testifies that he recalls no agreement as to visitation and the attorney in the action declares positively that respondent understood she would have to give up her children and therefore the decree contained no provision for visitation. However this may all be, the fact that from the start reasonable access to the children was allowed the mother by the father would indicate that there was some arrangement off the record other than written into the divorce decree. (*Matter of Norris,* 157 Misc. 333.) This matter of the privilege of visitation and the acting thereon by respondent assumes importance on account of her claim that in the absence of proof of abandonment on her part her consent is necessary to the adoption despite the provisions of section 111 of the Domestic Relations Law to the effect that consent shall not be required of a parent who has been divorced because of adultery.

It is manifest from a perusal of the cases that there has evolved over the years a construction of the statute which takes into account some phases which a literal reading thereof does not reveal. So far as " abandonment " in and of itself is concerned there is no question. If actual, unequivocal and absolute abandonment is shown then such parent has renounced his right to his children; they may be adopted without his consent and over his objections upon satisfactory proof that their moral and temporal interests will be promoted. (*Matter of Cohen,* 155 Misc. 202; *Matter of Paden,* 43 N. Y. S. 2d 305.)

It is clearly recognized that one who has abandoned his child is not on the same footing morally or legally as one who has been divorced for adultery. The former has personally and voluntarily and usually willfully, relinquished his rights by failing in his parental duty to support, maintain and share his love and affection. The latter, while he has transgressed his marital vows and violated the moral and penal law, has not necessarily either relinquished or severed the parental tie in any respect or been relieved of his duty to support.

This distinction between abandonment and divorce as it affects the children of the marriage is definitely recognized by law. Section 1170 of the Civil Practice Act provides that custody and care of children of the marriage shall be directed as justice requires. The courts in passing upon the question have in view as the paramount consideration, the best interests of the children, and in a proper case will even award custody to the offending parent. (*Burns* v. *Burns,* 264 App. Div. 894.) The mere absence of direction as to right of visitation in a divorce decree is of little moment as application may be made at any time for modification (Civ. Prac. Act, § 1170) and is of no consequence in the instant case where such right has been voluntarily given and, as before stated, may be considered to have been a continuing arrangement though not embodied in the decree. And where right of visitation is judicially given, the offending parent will not be deprived of his natural rights and the divorce decree in effect modified without adequate legal reason. (*Matter of Metzger,* 114 Misc. 313.) The term " legal reason ", as I construe it, must be taken to mean some reason aside from the mere existence of the divorce decree and the moral and temporal interests of the child, in other words, such conduct as shows clearly and conclusively a relinquishment by the parent of all parental claim (*Matter of Paden, supra; Matter of Munzel,* 160 Misc. 508), or that the parent has been judicially declared incompetent or adjudged to be a habitual drunkard, etc. (Domestic Relations Law, § 111, subd. [4]), and that such circumstances exist as warrant confirmation without notice. In the *Munzel* case adoption was granted and the divorce decree thus modified upon proof of abandonment. The opinion further justifies the inference that had there been no abandonment shown by way of disregard of the terms of the decree as to support the adoption would have been denied.

Application of the foregoing considerations to the facts here present precludes confirmance of the proposed adoption. Courts have ever been reluctant to sever finally the tie between parent and child, and the fact that equities may exist in favor of those seeking adoption is not enough. (*Matter of Norris, supra.*) There has been no showing sufficient to warrant our going to the extent of finding that any prospective benefit, financial or otherwise, to the children will justify the absolute severance of the parental tie between them and their mother. Submit, on notice, order denying adoption.