In the Matter of the Adoption of LINDA M. PORRAS, a Minor Child. ENRIQUE P. GARCIA, Appellant; WALTER SMITH, Respondent.

Second Department, May 31, 1961.

*Kepecs & Frischer* (*Sidney Freiberg* of counsel), for appellant.

*Francis M. McKeogh* for respondent.

*Per Curiam.* In this statutory adoption proceeding (Domestic Relations Law, §§ 110–112), the father of the child sought to be adopted, appeals from the Surrogate's order granting the petition and approving the adoption, over his objection and without his consent.

We are required to determine whether the evidence adduced sustains the Surrogate's conclusion that the father had abandoned his child and, therefore, his consent to the adoption was unnecessary. We have concluded that the evidence does not sustain the conclusion and find that the father did not abandon his infant daughter within the meaning of the statute (Domestic Relations Law, § 111).

The infant's father and mother were married on September 12, 1951, in Managua, Nicaragua. In January, 1952, the mother left the father in Nicaragua and returned to New York City. The separation, according to the mother's testimony, followed an argument with her mother-in-law during which her husband favored his mother rather than her. The mother further testified that when she left Nicaragua she assumed that the separation would be temporary and that she would soon return to her husband. He bought the tickets for her passage to New York and gave her money. He testified, however, that he understood that she was going back to New York for good. Shortly thereafter, he obtained a divorce from her in Nicaragua on the ground of abandonment.

Upon arrival in New York the mother discovered that she was pregnant and so notified the father. She received no correspondence from him until June, 1952, after he had been informed that she had undergone an appendicitis operation. At that time he sent her $600. The mother testified that after the daughter's birth, and apparently in 1952 and 1953, she received about $800 from the father. It is not clear from the evidence, however, whether she received a total of $800 or whether she received the $800 in addition to the $600 concerning which she had previously testified. She next heard from him in November, 1956, through his cousin; she heard nothing from him thereafter.

From the time the child was born, in October, 1952, the father sent no birthday cards or gifts to her; nor did he ask permission to see her until this proceeding was commenced. He did, however, write to his mother-in-law and made some inquiry concerning his daughter, although that inquiry was apparently made in 1952.

The petitioner and the mother were married in August, 1953, and the infant has resided with them since.

Ordinarily, the foregoing facts would amply justify both the finding that the father had abandoned his daughter and the conclusion that his consent to her adoption was not required. However, while we do not condone the father's apparent indifference to his daughter's welfare, we must, nevertheless, on the question of abandonment give considerable weight to the unusual circumstances disclosed in this case.

We are not dealing here with a situation in which rights of visitation could have been readily exercised by the father. On this record, we cannot find that he abandoned his wife when they separated in Nicaragua, or that he deserted his wife or child thereafter. He was in Nicaragua when the child was born, apparently practicing his profession, and the record does not disclose that he had the means or the opportunities to make trips to this country to visit his daughter, or that gifts or greetings to her, if sent, would have been accepted and delivered by the mother. The circumstances under which he and his wife had separated indicate that at the time of such separation there was some bitter feeling between them; and he could hardly have expected that he would be welcome at his former wife's home after he had divorced her. Even after the divorce, however, he sent her money for her support; and in 1956, knowing that his cousin was coming to New York, he asked him to communicate with petitioner and his former wife, and to offer his economic help for the child. He testified that he did not send money " Since they said they didn't need it ".

After he had been served with the citation in this proceeding, he asked permission to see his daughter, and sent money for her support. Both his request to see his child and his offer to support her were refused. It was conceded that after the mother's remarriage to petitioner, the father would not have been welcome as a visitor in their home.

The father further testified that it was not his intention to abandon his daughter; that he desired that the child should bear his name; and that he was willing and able to support her. He had no objection to the child's continuing to reside with the mother, but if she did not want the child he was prepared to look after her and had a home for her. Since the mother's marriage to petitioner the mother had made no demands on the father to contribute to his daughter's support, but if she had so requested he would have contributed. He had refused, when requested to do so, to give up the child, and would not consent to the adoption.

Considering these facts and the other evidence adduced, we are unable to find that there was, on the father's part, the

unequivocal and absolute abandonment of his daughter, which it is necessary to establish in order to justify a final severance of the tie between parent and child. In a case such as this, the burden placed on the petitioner to establish an abandonment by the natural parent is a heavy one, and we are of the opinion that it was not sustained on the record before us. (Cf. *Matter of Anonymous,* 13 Misc 2d 653; *Matter of Norris,* 157 Misc. 333; *Matter of Bistany,* 239 N. Y. 19; *People ex rel. Portnoy* v. *Strasser,* 303 N. Y. 539.)

Accordingly, the order appealed from should be reversed, on the law and the facts, without costs, and the petition for adoption should be dismissed. Findings of fact inconsistent herewith should be reversed, and new findings should be made, as hereinbefore indicated.

NOLAN, P. J., BELDOCK, UGHETTA, CHRIST and BRENNAN, JJ., concur.

In a statutory adoption proceeding (Domestic Relations Law, §§ 110–112), order of the Queens County Surrogate's Court, dated May 25, 1960, reversed on the law and the facts, without costs, and petition dismissed. Findings of fact inconsistent herewith are reversed, and new findings are made, as indicated in opinion.